Carley GRACIE, an individual; Gracie USA, a California corporation, Plaintiffs-counter-defendants-Appellants,

v.

Rorion GRACIE; Brajitsu, a California corporation; W.O.W. Promotions; Semaphore Entertainment Group, Defendants-counter-claimants-Appellees.

Nos. 98–15672, 98–16386

United States Court of Appeals, Ninth Circuit.

Argued Dec. 7, 1999

Submitted Jan. 27, 2000

Filed July 6, 2000

Ann McFarland Draper, San Francisco, California, for the plaintiffs-appellants.

Anthony L. Head, San Francisco, California, for the defendants-appellees.

Before: ALDISERT,[1] O'SCANNLAIN, and MICHAEL DALY HAWKINS, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must resolve a variety of issues in this complex trademark litigation arising out of the U.S. activities of two members of the large and prominent Gracie family of Brazil, known for popularizing, competing in, and teaching a form of the martial art jiu-jitsu.

I

Carley Gracie ("Carley") and Rorion Gracie ("Rorion")[2] are first cousins. More than 38 members of this Brazilian family have been involved in jiu-jitsu competition or teaching. Both Carley and Rorion operate California-based jiu-jitsu instruction businesses.

Carley came to the United States from Brazil in the early 1970s. Carley began teaching jiu-jitsu in the eastern United States as early as 1974 and in California sometime after he arrived in the state in 1979. Carley has used the name "Gracie" in identifying his jiu-jitsu instruction business.

In the late 1970s, Rorion came to the United States and began teaching the "Gracie method" of jiu-jitsu in Southern California. He used the term "Gracie Jiu–Jitsu" to identify his business, which now consists of a nationwide chain of training facilities. Rorion publicized his jiu-jitsu instruction business through national advertising which used the term "Gracie Jiu–Jitsu" and the "Triangle Design" logo, which consists of two grappling jiu-jitsu figures outlined by an open triangle. In 1988, Rorion applied for and obtained a California registration for the Triangle Design logo. In 1989, Rorion applied for and obtained federal registrations for the "Gracie Jiu–Jitsu" service mark and the Triangle Design logo. Rorion has actively enforced his rights in "Gracie Jiu–Jitsu" and the Triangle Design logo through litigation.

In December 1994, Carley sued Rorion, challenging the validity of the term "Gracie Jiu–Jitsu" and the Triangle Design logo as service marks. Carley's first amended complaint alleged the following federal and state causes of action: (1) cancellation of registration, (2) damages for false or fraudulent registration, (3) untrue or misleading advertising, (4) defamation, (5) interference with prospective business relationships, (6) infringement of common law service marks under California law, (7) unfair competition, (8) attempt to monopolize in violation of the Sherman Act, and (9) false advertising in violation of 15 U.S.C. § 1125(a). Rorion counterclaimed, alleging that Carley infringed registered marks for "Gracie Jiu–Jitsu" and the Triangle Design logo.

Pretrial proceedings and discovery in the case continued into 1997. In March 1997, Rorion filed a motion for summary judgment, which Carley opposed. The district court granted summary judgment in favor of Rorion with respect to Carley's first, second, fourth, fifth, sixth, and eighth causes of action. The district court also granted summary judgment in favor of Rorion with respect to the third, seventh and ninth causes of action, "subject to the following exception: [Rorion's] motion for summary judgment is denied with respect to [Carley's] claim for false advertising under 15 U.S.C. § 1125(a)(1) and Cal. Bus. and Prof.Code § 17500, and [Carley's]

---

1. Ruggero J. Aldisert, Senior Judge, United States Court of Appeals for the Third Circuit, sitting by designation.

2. Several business entities owned by, operated by, or affiliated with either Carley or Rorion are also parties to this action. For convenience, we refer to the appellants collectively as "Carley" and the appellees collectively as "Rorion."

claim for unfair competition, for [the making of specified statements]." The district court also denied Rorion's motion for summary adjudication of his counterclaims for infringement.

A jury trial on the remaining claims began in November 1997. On November 18, 1997, the district court granted Carley's motion to dismiss all defendants other than Rorion himself. On November 19, 1997, the jury returned a verdict in which it found that (1) Rorion did not have a valid federal service mark for "Gracie Jiu–Jitsu," (2) Rorion did have a valid federal service mark for the registered Triangle Design logo, (3) Carley infringed the registered Triangle Design logo, (4) Carley's infringement was "willful," and (5) Carley profited from the infringement in the amount of $108,000.

On November 24, 1997, the district court held a hearing regarding Carley's equitable defenses to infringement of the Triangle Design logo and also heard motions by Rorion challenging the evidence of genericness presented at trial regarding the term "Gracie Jiu–Jitsu." The district court entered its findings of fact and conclusions of law regarding Carley's equitable defenses to infringement on December 3, 1997, ruling in favor of Rorion. Carley subsequently moved to amend or correct the court's findings.

Also on November 24, 1997, Carley filed a motion to modify the court's summary judgment ruling and to order cancellation of the registration for which the jury found Rorion had no valid federal service mark. Carley's motion was denied.

On January 8, 1998, the district court entered a judgment pursuant to the jury verdict and the court's findings of fact and conclusions of law. The judgment provided only that "judgment shall be entered in favor of [Rorion] and against [Carley] in the amount of $108,000." This original judgment, which the court subsequently amended, omitted mention of both the jury verdict in favor of Carley on the "Gracie Jiu–Jitsu" infringement counterclaim and the jury's finding of invalidity with respect to the "Gracie Jiu–Jitsu" service mark. This judgment also did not grant Rorion any injunctive relief with respect to his registered Triangle Design service mark.

Both Carley and Rorion filed a variety of post-trial motions. Carley filed a Rule 59 motion for a new trial on the Triangle Design infringement counterclaim. Rorion filed a motion seeking $620,000 in attorneys' fees. Both sides filed motions to amend the judgment: Carley asked the court to amend the judgment to reflect the jury's verdicts with respect to "Gracie Jiu–Jitsu," while Rorion asked the court to amend the judgment to include injunctive relief to protect the Triangle Design logo.

The district court ruled on the post-trial motions on March 13, 1998. The court denied Carley's motion for a new trial. The court also made minor amendments to its findings of fact and conclusions of law. As requested by Rorion, the district court entered a permanent injunction prohibiting Carley from using any logo similar to Rorion's Triangle Design logo. The district court also awarded Rorion $620,000 in attorneys' fees. Finally, the district court entered an amended judgment, in which it (1) entered judgment in favor of Rorion on his claim of infringement of the Triangle Design logo; (2) entered judgment in favor of Carley on Rorion's claim of infringement of the "Gracie Jiu–Jitsu" name; (3) declared that Rorion "do[es] not have a valid service mark for the name GRACIE JIU–JITSU," as requested by Carley's motion to amend the judgment; (4) awarded Rorion $108,000 on his Triangle Design logo counterclaim, the amount of Carley's profits as found by the jury; and (5) confirmed the grant of permanent injunctive relief to Rorion, as requested by Rorion's motion to amend the judgment.

Both sides filed notices of appeal. Carley noticed his intent to appeal the portion of the amended judgment relating to the Triangle Design logo and various pretrial rulings (including the summary judgment

ruling on his cancellation claim). Rorion noticed his intent to appeal the portion of the amended judgment stating that he had no valid service mark in "Gracie Jiu–Jitsu."

On May 12, 1998, Carley filed a motion for an award of attorneys' fees, based on the amended judgment, for his successful defense against Rorion's claim of infringement of the "Gracie Jiu–Jitsu" name. Rorion opposed the motion. The district court denied Carley's motion for attorneys' fees; Carley filed a notice of appeal from that order as well.

All three appeals (Carley's two appeals and Rorion's cross-appeal) were consolidated by order of this court. Rorion's cross appeal was dismissed for failure to prosecute.

## II

We must first decide whether the district court erred in refusing to order cancellation of Rorion's federal registration for "Gracie Jiu–Jitsu" pursuant to its power over registrations under 15 U.S.C. § 1119. Consistent with the jury verdict finding that Rorion did not have a valid federal service mark for "Gracie Jiu–Jitsu," the district court issued an amended judgment containing the following language: "It is also ORDERED, ADJUDGED, and DECREED that defendants do not have a valid service mark for the name GRACIE JIU–JITSU." Carley argues that the district court erred in refusing to order cancellation of Rorion's federal registration for "Gracie Jiu–Jitsu" following the jury's finding of invalidity.[3]

■ Although there is a paucity of case law on point (perhaps because the situation at hand is rather unusual), the issue before us is not difficult to resolve. Once the district court gave the jury the power to determine the validity of Rorion Gracie's federal service mark, refusing to cancel the registration for "Gracie Jiu–Jitsu" after the jury declared it to be incapable of serving as a mark was inconsistent with the court's duty to give effect to a jury verdict, and as such erroneous. While a general verdict in favor of Carley on Rorion's "Gracie Jiu–Jitsu" infringement claim could have been reconciled with the district court's refusal to cancel Rorion's federal registration, because a jury could have found Carley not liable for infringement without passing on the validity of Rorion's mark, a special verdict presents an entirely different case.

In cases not involving jury trials, district courts have been reversed for refusing to order the cancellation of registrations for claimed marks found to be incapable of serving as valid marks. *See, e.g., American Heritage Life Ins. Co. v. Heritage Life Ins. Co.,* 494 F.2d 3, 13–14 (5th Cir.1974); *Bascom Launder Corp. v. Telecoin Corp.,* 204 F.2d 331, 335–36 (2d Cir.1953) ("The evidence so clearly shows that the mark was merely descriptive that the judge should have directed the cancellation of its registration."); *cf. International Order of Job's Daughters v. Lindeburg & Co.,* 727 F.2d 1087, 1091 (Fed.Cir.1984) (holding that under the doctrine of issue preclusion, the Ninth Circuit's earlier determination that a name and emblem did not serve as a trademark required cancellation of the registration). These cases support our conclusion that the district court erred in

---

3. Carley also challenges the district court's grant of summary judgment in favor of Rorion on Carley's first cause of action, for cancellation of registration. The correctness of the summary judgment grant, however, is something of a red herring. The real issue on appeal is not the grant of summary judgment in favor of Rorion, but the district court's refusal to invalidate Rorion's federal registration for "Gracie Jiu–Jitsu" in spite of a jury verdict finding that Rorion lacked a valid federal service mark for the name "Gracie Jiu–Jitsu."

We also note that Carley seeks invalidation of Rorion's California registration for "Gracie Jiu–Jitsu." As pointed out by Rorion, this claim lacks merit because the jury verdict addressed only the validity of Rorion's federal registration and made no reference to Rorion's state registration.

refusing to cancel a mark found to be invalid. While it was within the district court's power to reject the jury's verdict of invalidity as against the weight of the evidence, the district court did not do so, explicitly denying Rorion's motion for judgment as a matter of law after the jury verdict of invalidity. In light of the jury verdict, which the district court allowed to stand, the district court should have ordered cancellation of Rorion's federal registration for "Gracie Jiu–Jitsu."

## III

Carley contends that the district court erred in denying his Rule 59(a) motion for a new trial on the issue of infringement of the Triangle Design service mark. Carley argues that the jury reached a verdict that it could not have reached in light of the evidence presented at trial and the instructions given by the court. Carley notes that the jury was instructed that it could find Carley liable for infringement only if it found "that Carley Gracie and/or Gracie U.S.A. *used* the *Triangle Design logo* without the consent of Rorion Gracie in a manner is [sic] likely to cause confusion among ordinary purchasers as to the source of the services." Thus, according to Carley, the jury could have found infringement only if it found that Carley "actually used" Rorion's Triangle Design logo, i.e., if the jury found that Carley used a logo *identical* to Rorion's registered mark. Because the evidence at trial showed only that Carley used a logo that was similar, but not identical, to the Triangle Design logo, the jury reached a verdict unsupported by the evidence. Carley attempts to support this argument by claiming that Rorion alleged throughout the case that Carley "slavishly copied" the Triangle Design logo. According to Carley, Rorion only articulated a theory of infringement through confusing similarity (as opposed to exact copying) in his closing argument.

As pointed out by Rorion, here the jury was instructed that "in determining whether the use of a mark by [Carley] is likely to cause confusion concerning the source of [Carley's or Rorion's] services," it could consider "whether the mark used by the [Carley] is similar to Rorion Gracie's mark in appearance, sound or meaning." Rorion argues that in light of this instruction—to which Carley did not object—the jury was permitted to find infringement based on "[m]ere similarity of marks," rather than exact copying. According to Rorion, the evidence at trial was sufficient to support this theory of infringement because it showed that Carley copied the two most distinctive elements of the Triangle Design logo: a triangle enclosing two grappling figures. In response to Carley's claim that Rorion only argued a theory of liability based on mere similarity at a late stage in the case, Rorion refers back to the complaint asserting his counterclaims—in which he alleged that Carley's "use of the logotype ... is likely to cause confusion" and that Carley "intended and intends to pass off and palm off [his] services as those of Rorion Gracie"—as evidence that Rorion "has *always* argued that plaintiffs' triangle designs are likely to be confused with, and thus infringe, the federally registered Triangle Design service mark." In response to Carley's claim that Rorion's only theory of liability was that Carley "slavishly copied" the Triangle Design logo, Rorion places the "slavishly copied" language in context:

> [P]laintiffs fixate on the words "slavishly copied," which admittedly appear in the Counterclaims, and ignore the context. "Carley Gracie and Gracie USA have infringed Rorion Gracie's registered marks by adoption and use of a logotype slavishly copied from Rorion Gracie's registered mark ... *as shown in Exhibit B* to the First Amended Complaint herein." Counterclaims, ¶ 2 (emphasis added). Thus, Rorion Gracie incorporated by reference the logo types illustrated in plaintiffs' First Amended Complaint.

According to Rorion, these citations to his pleadings establish that his allegations against Carley went beyond a simple claim of "he copied my logo exactly"; instead, Rorion made a more nuanced allegation: "he copied my logo slavishly—as indicated in the following visual exhibits."

In denying Carley's motion for new trial, the district court initially observed that federal law supports the proposition that "liability for trademark infringement can be based on use of *similar* marks, and does not require a finding of exact copying." The district court then noted that the jury was instructed that it could consider the *similarity* of an allegedly infringing symbol in determining the existence of the likelihood of confusion required for Lanham Act liability. The district court concluded that in light of this instruction, the jury's verdict of infringement was not against the weight of the evidence.

▪▪▪ Although the district court's analysis could have been more detailed and the jury instructions more precise, denial of the new trial motion was proper and not an abuse of discretion. The term "used" in the jury instruction requiring the jury to find that Carley *"used* the Triangle Design logo without the consent of Rorion" could be read in at least two possible ways.[4] "Used" could be read in a narrow, highly technical manner as meaning "copied exactly," as urged by Carley. Alternatively, "used" could be read more broadly, as a synonym for "utilized," "exploited," or "took advantage of." In deciding what meaning to assign to the term "used," certain principles relating to the interpretation of jury instructions are relevant. The formulation of jury instructions is within the discretion of the trial court. *See United States v. Powell,* 955 F.2d 1206, 1210 (9th Cir.1991). In reviewing jury instructions, we "consider whether the instructions—*taken as a whole* and *viewed in context of the entire trial*—were mis-

leading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process." *United States v. Warren,* 25 F.3d 890, 898 (9th Cir.1994) (emphases added). Here, reading the jury instructions in their proper context suggests that a broad definition of "used" would be appropriate, insofar as it appears to be more consistent with the rest of the jury instructions, including the instructions telling the jury that it could take the similarity of logos into account in evaluating the likelihood of confusion.

Read as a whole, then, the jury instructions permitted the jury to find trademark infringement based on confusing similarity of the logos at issue; a finding of exact copying was not required. The jury's verdict of infringement was thus supported by the evidence, which included Carley's and Rorion's highly similar logos for their competing jiu-jitsu instruction businesses. While the jury instructions given by the district court could have been more carefully crafted, any imprecision was at most a technical defect. Accordingly, we affirm the denial of Carley's new trial motion.

## IV

Carley contends that there was no basis for the court's award of $108,000 to Rorion for Carley's infringement of the Triangle Design logo. According to Carley, this award was erroneous because Lanham Act damages cannot be recovered in the absence of evidence of actual consumer confusion. Because there was no evidence that any of Rorion's customers were confused by Carley's use of a triangular logo similar to the registered Triangle Design logo, Carley argues, no damages should have been awarded.

In response, Rorion argues that Carley's objection is both untimely and misplaced. First, Rorion points out that Carley failed to object at trial to the applicable sections

---

**4.** The jury instructions do not define the term "used." The term "use of a mark" is defined elsewhere in the instructions as "use on a continuous and substantial basis," but the term "use" itself is not defined.

of (1) the jury instructions, which did not require the jury to find proof of actual confusion in order to grant a recovery of profits for infringement, and (2) the verdict form, which asked the jury to "state the total profits made by Carley Gracie" if it found Carley liable for infringement. Second, Rorion argues that evidence of actual confusion was not required because "[w]illful infringement, not actual confusion, is the touchstone for an award of damages or accounting of profits." In this case, because the jury verdict found that Carley's infringement of Rorion's Triangle Design logo was "willful," an accounting of profits was a proper remedy.

■ We conclude that Rorion has the better of the argument. The Lanham Act provision upon which Rorion's trademark infringement claim rested, 15 U.S.C. § 1114, does not require actual consumer confusion for recovery of profits. Rather, by its terms § 1114 requires only a *likelihood* of confusion combined with *willful infringement:* "[T]he registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to cause confusion, or to cause mistake, or to deceive." While *actual* confusion may be relevant as evidence of the *likelihood* of confusion (which *is* required for an award of profits under § 1114), under our precedents a showing of actual confusion is not necessary to obtain a recovery of profits. *See Lindy Pen Co., Inc. v. Bic Pen Corp.,* 982 F.2d 1400, 1410–11 (9th Cir.1993); *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1146 (9th Cir.1997) (citing *Lindy Pen* ); *Maier Brewing Co. v. Fleischmann Distilling Corp.,* 390 F.2d 117, 123 (9th Cir.1968). Accordingly, there was no error.

## V

Carley argues that the district court abused its discretion in deciding to award attorneys' fees to Rorion on the counterclaim for infringement of the Triangle Design logo. Carley also challenges the amount of the $620,000 award. We address these contentions in turn.

### A

■ The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a). "While the term 'exceptional' is not defined in the statute, generally a trademark case is exceptional for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or willful." *Lindy Pen,* 982 F.2d at 1409. Carley contends that the case at bar is not an "exceptional case" within § 1117 so as to permit an award of attorneys' fees.

■ Carley's argument is difficult to advance successfully. Here the jury explicitly found that Carley engaged in "willful" infringement of Rorion's Triangle Design logo. The district court's decision to make a fee award to Rorion thus flows quite naturally from the jury's finding of willful infringement and the legal standard for "exceptional cases" under § 1117.

In trying to escape the effect of the jury's finding of willful infringement, Carley argues that the jury was not properly instructed regarding willfulness. He points to *Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc.,* 951 F.2d 684 (5th Cir.1992), in which the Fifth Circuit reversed a fee award despite a jury finding of "willful" infringement. In *Texas Pig Stands,* the fee award was reversed because the jury was instructed that "willfully" only meant "done voluntarily and intentionally"; the trial court failed to convey to the jury the requirement that "willfully" include an element of culpability or bad faith. *Id.* at 697. Carley contends that here, as in *Texas Pig Stands,* the jury instructions were similarly defective.

This argument lacks merit. The jury in this case was instructed that "you may find that [plaintiffs] intentionally infringed the [ ] service marks, if you find that they acted 'willfully,' or deliberately *and in bad*

*faith,* in order to trade upon Rorion Gracie's good will." Thus the jury was properly instructed as to the bad faith component of willfulness, and its finding of willful infringement is entitled to greater deference than that of the *Texas Pig Stands* jury.

In sum, because a properly instructed jury found that Carley willfully infringed Rorion's Triangle Design logo, the district court did not abuse its discretion in deciding to make a fee award.

### B

The district court granted the entire fee award requested by Rorion, awarding him over $620,000 in attorneys' fees. We note that this award is a substantial one, almost six times the size of the damages awarded to Rorion in this case. Carley challenges the size of the award by arguing that the court could only award attorneys' fees under the Lanham Act for fees "incurred in prosecuting a Lanham Act claim on which that party prevails." Carley claims that the district court abused its discretion in awarding to Rorion the entire amount of attorneys' fees requested by Rorion (in excess of $620,000), which included fees for legal work related to both non-Lanham Act claims and Lanham Act claims on which Rorion did not prevail.

 The Lanham Act simply provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party," 15 U.S.C. § 1117(a); it does not address the proper procedure for determining reasonable attorney fees in a case involving non-Lanham Act claims and unsuccessful Lanham Act claims, in addition to successful claims under the Act. We have not yet addressed the question of whether the correct determination of attorneys' fees in cases like the one at bar requires allocation or apportionment between Lanham Act and non-Lanham Act claims.

In making this determination, however, we are not without guidance from the deci-

sions of several other courts. The Sixth Circuit has held that "under 15 U.S.C. § 1117(a), attorneys' fees are recoverable only for work performed in connection with claims filed under the Lanham Act." *U.S. Structures, Inc. v. J.P. Structures, Inc.,* 130 F.3d 1185, 1193 (6th Cir.1997). In *Neva, Inc. v. Christian Duplications Int'l, Inc.,* 743 F.Supp. 1533, 1543 (M.D.Fla.1990), a district court held that Lanham Act plaintiffs are "only entitled to attorney fees for legal expenses incurred in prosecuting the claim arising under the Lanham Act." Consistent with these decisions, we hold that as a general matter, a prevailing party in a case involving Lanham Act and non-Lanham Act claims can recover attorneys' fees only for work related to the Lanham Act claims.

 We note that among the handful of district courts that have addressed calculation of a Lanham Act fee award in a case involving Lanham Act and non-Lanham Act claims, the following rule appears to be emerging: In an award of "reasonable attorney fees" pursuant to the Lanham Act, a party cannot recover legal fees incurred in litigating non-Lanham Act claims *unless* "the Lanham Act claims and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims." John W. Crittenden & Eugene M. Pak, *Monetary Relief Under Lanham Act Section 35, in Litigating Copyright, Trademark & Unfair Competition Cases for the Experienced Practitioner* 1998, at 419 (PLI Pat., Copyrights, Trademarks and Literary Property Course Handbook Series No. 537, 1998) (surveying district court cases, including *Neva* ) (emphasis added); *see also* Robin C. Larner, *Award of attorneys' fees under § 35(A) of Lanham Act,* 82 A.L.R. Fed. 143, 198 (1987) (comparing two district court decisions, one allowing recovery of legal fees incurred on state law claims related to Lanham Act claims and one denying recovery of such legal fees). Thus, despite the general rule of apportionment, in a specific case apportionment

might not be required if "it is impossible to differentiate between work done on claims." We hold, however, that the impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to adjust the fee award in an effort to reflect an apportionment. In other words, apportionment or an attempt at apportionment is required unless the court finds the claims are so inextricably intertwined that even an estimated adjustment would be meaningless.

Based on the record before us, we must remand for the district court to attempt an apportionment or to make findings that apportionment would be impossible. In declining to apportion fees, the district court here stated that "it would be impossible to estimate the exact percentage of the defendants' fees that are attributable to Lanham Act claims." While calculating an "exact percentage" may be impossible, this does not relieve the district court of its duty to make some attempt to adjust the fee award to reflect, even if imprecisely, work performed on non-Lanham Act claims.

In addition to its failure to apportion fees between Lanham Act and non-Lanham Act claims, the district court also erred by not developing an adequate record to establish the reasonableness of the total fee award. A remand is therefore appropriate to permit the district court to conduct a more detailed and thorough inquiry into what would constitute a reasonable amount of attorneys' fees in this case.

"In setting a reasonable attorney's fee, the district court should make specific findings as to the rate and hours it has determined to be reasonable." *Frank Music Corp. v. Metro–Goldwyn Mayer Inc.*, 886 F.2d 1545, 1557 (9th Cir.1989). Our precedents make clear that these findings must go beyond the conclusory. In *Sealy, Inc. v. Easy Living, Inc.*, 743 F.2d 1378, 1385 (9th Cir.1984), we reversed an award of attorneys' fees and remanded after find-

ing that the district court "appears to have accepted uncritically plaintiff's representations concerning the time expended on this case," awarding the entire amount requested without question. Although plaintiff's counsel provided extensive records to show how much time had been spent on the case, "there [was] no showing that the time actually spent was reasonably necessary." *Id.* Furthermore, "[t]he district court's finding that the services rendered and the hours spent by plaintiff's counsel were 'reasonable and necessary' is conclusory and unsupported by any analysis of the time records actually presented in this case." *Id.*

In *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614 (9th Cir.1993), we set forth the steps a district court should follow in determining the amount of a fee award under the Lanham Act:

When it sets a fee, the district court must first determine the presumptive lodestar figure by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. Next, in appropriate cases, the district court may adjust the "presumptively reasonable" lodestar figure based upon the factors listed in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69–70 (9th Cir.1975), that have not been subsumed in the lodestar calculation.

*Id.* at 622 (internal citation omitted). In *Intel*, we set aside a fee award and returned it to the district court for further consideration. Noting that the requesting party submitted only summaries of hours worked, rather than the underlying materials, we held that the district court's procedure for determining the fee award was "inadequate" and frustrated meaningful appellate review. *Id.* at 623.

In the case at bar, the district court expressed its exasperation with the "dilatory conduct" of plaintiff's counsel before making the following brief, somewhat conclusory statement regarding the reasonableness of the requested fee award: "Given the number of motions filed in this case,

the number of delays and continuances, the eventual length of the trial, and the number of witnesses, the defendants' requested attorneys' fee award of $620,238.43 is reasonable." The district court made no findings as to the rates and hours it determined to be reasonable. Like the district court in *Sealy*, the district court here uncritically accepted a party's representations as to the time and money reasonably spent on the case. Like the district court in *Intel*, the district court did not determine a presumptive lodestar figure, nor did it consider any of the *Kerr* factors for adjusting the amount of a presumptively reasonable fee award. As in *Intel*, the party requesting a fee award in this case submitted "mere summaries of hours worked," unaccompanied by the underlying material. The underdeveloped record with respect to the fee award in this case prevents us from reviewing its adequacy.

Accordingly, we remand the fee award of $620,000 for reconsideration in light of the principles set forth above. On remand, the district court should (1) make an apportionment between Lanham Act and non-Lanham Act claims, as well as claims on which Rorion prevailed and claims on which he did not, in setting a reasonable fee; and (2) determine a presumptive lodestar figure, subject to possible adjustment based on the *Kerr* factors.

## VI

Finally, Carley challenges the district court's decision not to award him attorneys' fees on his successful defense of the counterclaim for infringement of the service mark registration for "Gracie Jiu–Jitsu."

■■■ As Carley correctly notes (in challenging the fee award to Rorion), the Lanham Act *permits*, but does not mandate, an award of attorneys' fees to a prevailing party in "exceptional circumstances." 15 U.S.C. § 1117(a). Exceptional circumstances can be found when

the non-prevailing party's case "is groundless, unreasonable, vexatious, or pursued in bad faith." *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1112 (9th Cir.1999) (internal quotation marks omitted). The above standard for exceptional circumstances applies to prevailing defendants as well as prevailing plaintiffs under the Lanham Act. *See Stephen W. Boney, Inc. v. Boney Servs., Inc.*, 127 F.3d 821, 827 (9th Cir.1997). Here, Carley seeks attorneys' fees as a successful defendant, for prevailing in Rorion's counterclaim for infringement.

■■ A party alleging that the district court erred by failing to award attorneys' fees under § 1117 faces an uphill battle. "The text of section 1117 places a heavy burden of an attorney arguing that the district court abused its discretion in refusing to award attorneys' fees," as we explained in *Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1134 (9th Cir. 1986). "First, the remedy is available only in 'exceptional cases.' Second, the statute provides that the court 'may' award fees; it does not require them. Finally, the Senate Report expressly commends this decision to the discretion of the [trial] court." *Id.*

■■ Carley's conclusory statements regarding Rorion's supposed bad faith are insufficient to carry Carley's burden under *Polo Fashions*. Carley uses strong language to call into question Rorion's motives in filing the "Gracie Jiu–Jitsu" counterclaim, but Carley fails to cite any specific record evidence to support his aggressive speculation regarding Rorion's state of mind. As noted by the district court, "[p]laintiffs make no showing of any improper purpose in Defendants' filing the counterclaim for trademark infringement. They present no proof that Defendants acted in bad faith or filed the counterclaim unreasonably." In light of the Lanham Act's requirement of "exceptional circumstances," as interpreted— rather narrowly—by our past decisions, the district court did not abuse its discre-

tion in denying the motion for attorneys' fees.

## VII

In light of the jury's special verdict finding that Rorion does not have a valid federal service mark in "Gracie Jiu–Jitsu," the district court should have ordered cancellation of Rorion's federal registration. On remand, the district court should order cancellation of the federal registration, as well as award any other appropriate relief consistent with the cancellation.

The Triangle Design logo, however, presents an entirely different case. The jury, after receiving proper instructions, found that Rorion has a valid federal service mark for the Triangle Design logo, which Carley infringed in a willful manner. The district court thus did not abuse its discretion in denying Carley's new trial motion, and an accounting of profits was an appropriate remedy.

Although the district court's decision to award attorneys' fees to Rorion was not an abuse of discretion, we must remand to permit the district court to make more detailed findings relating to the total amount and reasonableness of the fees awarded, according to the principles set forth in this opinion.

AFFIRMED in part, REVERSED and REMANDED in part. Each party shall bear its own costs in this appeal.