**Lord Simon CAIRNS, et al., Plaintiffs,**

v.

**FRANKLIN MINT CO.,
et al., Defendants.**

**No. CV 98–3847 FMC (BQRx).**

United States District Court,
C.D. California.

Sept. 12, 2000.

Shari Mulrooney Wollman, Mark S. Lee, Seth A. Gold, Alison Spear Ullendorff, Manatt Phelps & Phillips, Los Angeles, CA, Cara R. Burns, Gradstein Luskin & Van Dalsem, Los Angeles, CA, for plaintiffs.

Robert A. Meyer Douglas E. Mirell Daniel J. Friedman Lisa Lyn Horlick Los Angeles, CA, Robert N. Treiman, Loeb & Loeb Los Angeles, CA, for defendants.

## ORDER ON DEFENDANTS' MOTION FOR ATTORNEYS' FEES

COOPER, District Judge.

### I. Introduction

The Court granted summary judgment for the defendants on June 27, 2000. After over two years of litigation in this Court, an interlocutory appeal, and resist-ing efforts to change the right of publicity statute in the legislature, defendants seek attorneys' fees totaling $3,124,121.85 [1] for over 10,900 hours of work on this case. On September 11, 2000, the Court heard oral argument on the Motion. The Court now issues the following attorneys' fees award.

### II. Standard

■ Defendants are entitled to attorneys' fees incurred in successfully defending plaintiffs' claim that defendants violated the right of publicity statute. "The prevailing party or parties in any action under this section shall also be entitled to attorneys' fees and costs." Cal. Civ.Code § 3344.1(a)(1) previously codified at Cal. Civ.Code § 990.

■ The Lanham Act permits an award of attorneys' fees to a prevailing party "in exceptional circumstances." *See* 15 U.S.C. § 1117(a).[2] "Exceptional circumstances can be found when the non-prevailing party's case 'is groundless, unreasonable, vexatious, or pursued in bad faith.'" *Gracie v. Gracie*, 217 F.3d 1060, 1071 (9th Cir.2000) quoting *Interstellar Starship Servs., Ltd. v. Epix Inc.*, 184 F.3d 1107, 1112 (9th Cir.1999). This standard applies to prevailing defendants as well as prevailing plaintiffs. *See id.*

### III. Discussion

■ Typically, the starting point for determining a reasonable attorney fee award is the Lodestar method: multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The Court finds that the hourly rates sought are reasonable. However, the Court finds that the unusually large num-

---

**1.**

| | |
|---|---|
| 100% Right of Publicity Claim | 232,777.50 |
| 50% Right of Publicity Claim | 1,046,143.50 |
| Computer Research Sen. Bill | 1,609.73 |
| Comp. Res. 50% Right of Pub. | 47,117.56 |
| 100% Trademark | 713,212.50 |
| 50% Trademark | 1,046,143.50 |
| Comp. Res. 50% Trademark | 47,117.56 |
| Less 10,000 courtesy credit | (10,000.00) |
| | $3,124,121.85 |

**2.** "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a).

ber of hours (10,900) and timekeepers (45) makes application of the Lodestar method as it is traditionally employed, unworkable in this case. Instead, the Court will determine the reasonable attorneys' fee for this case by using defendants' fee request as a starting point. The Court will then deduct certain amounts from defendants' total as explained below. The Court finds that defendants' fee request is an appropriate starting point because defendants' counsel have made "a good faith effort to exclude from the fee request hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 434, 103 S.Ct. 1933; (Dec. Meyer 22:14–23.).

## A. *Allocation of Fees*

■ Defendants reached their total fee amount by segregating time allocable exclusively to either the right of publicity claim or the trademark claims. They allocated the remaining time equally between the right of publicity claim and the trademark claims. Plaintiffs dispute that the time not dedicated exclusively to one issue should be divided in half. They contend that the work on the right of publicity claim was limited to briefing the following: the motion to dismiss, the availability of an interlocutory appeal, the appeal, supplemental briefing on appeal, motion to reinstate and motion for fees and costs.

The Court finds that it is inappropriate to allocate half of the combined time to the right of publicity claim, which was on appeal while the remaining trademark claims were being litigated. Accordingly, the Court will reduce by fifty percent the amount of fees defendants have designated as "50% right of publicity." The fifty percent subtracted from the "50% right of publicity" fees will be added to the fees designated as "50% trademark claims." For the same reason, the computer research fees allocated to the right of publicity claim will be reduced by fifty percent. That amount will be added to the fees

designated as "computer research 50% Trademark."

## B. *Trademark Claims*

Plaintiffs contend that defendants are not entitled to fees for the Lanham Act claims because this is not an exceptional case. Plaintiffs filed three claims based on the Lanham Act: false endorsement, dilution and false advertising.

■ The Court does not conclude that plaintiffs' false endorsement claim, although ultimately unsuccessful, was "groundless, unreasonable, vexatious or pursued in bad faith". The Ninth Circuit has previously and uniquely recognized the right of a celebrity to sue for false endorsement. Although it is clear that this case was well outside the bounds of any previous decision, plaintiffs' claim could be considered an attempt to extend existing law. As explained in the Court's order granting summary adjudication for the defendants, the fact that the claim was brought by plaintiffs' as opposed to the celebrity, and the lack of an "endorsement" made the claim legally deficient. However, it does not rise to the level of "groundless, unreasonable, vexatious or bad faith."

■ Defendants point to plaintiffs' public statements about their success in securing additional licensing fees as a result of the litigation, arguing that this is evidence of bad faith. However, selectively enforcing one's trademark rights is not equal to pursuing a claim in bad faith.[3] Defendants are not entitled to recover attorneys' fees for the false endorsement claim.

■ In contrast, plaintiffs' claims for dilution and false advertising were groundless and unreasonable. Unlike the endorsement claim which could be considered argument for an extension of existing law, the dilution claim had no legal basis. As

---

**3.** Nonetheless, having met with a legal determination that plaintiffs do not have a legal right to the name "Diana, Princess of Wales" or the likeness of the same, future litigation on the part of plaintiffs to attempt to enforce trademarks may well fit defendants' allegations of bad faith.

explained in the Court's order, plaintiffs' claim for dilution was based on the "absurd" contention that "Diana, Princess of Wales" had taken on a meaning other than identification of an individual. (June 27, 2000 Order at 21.) Attempting to argue that "Diana, Princess of Wales" had acquired a secondary meaning falls just short of frivolous. Defendants are entitled to recover fees for defending the dilution claim.

■ Similarly, the false advertising claim was groundless and unreasonable. The claim was groundless because the statements at issue were true. It appears that plaintiffs had no reasonable basis to believe they were false. At no time during the litigation did plaintiffs present evidence to cast doubt on the veracity of the advertising statements. (June 27, 2000 Order at 23.) The claim is also unreasonable because plaintiffs should have either not brought the claim in the first instance, or voluntarily dismissed it when it was clear that there was no evidence to support it. Defendants are entitled to recover attorneys' fees for defending this claim.

Because the Court finds that defendants are not entitled to recover fees for one of the three trademark claims, the Court reduces by thirty percent the fees attributed to the trademark claims.

## C. *Research Fees*

■ Plaintiffs contend that defendants cannot recover Westlaw fees. Courts are split over whether computer research fees are recoverable. *See In re Media Vision Technology Securities Litigation,* 913 F.Supp. 1362, 1370 (N.D.Cal.1996). The Ninth Circuit has not weighed in on the debate. *See id.* Some courts take that view that computerized legal research is a component that must be included in an attorney's hourly rate as overhead. *See id.* citing *Leftwich v. Harris–Stowe State College,* 702 F.2d 686, 695 (8th Cir.1983). Others view computer research fees as

attorneys' fees because the computer research reduces the number of hours spent researching.

> The added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee.

*Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago,* 38 F.3d 1429, 1440–1441 (7th Cir.1994).

The Court agrees with the Seventh Circuit's view and finds that, in general, attorney research time is greatly reduced by the use of computer research. However, Westlaw charges are not an exact substitute for an attorney's hourly rate. Moreover, some part of Westlaw's charges must be considered overhead, if for no other reason than the fact that law firms do not charge clients for law books. Accordingly, to reflect these considerations, the Court finds that the computer research fees must be reduced by twenty-five percent.[4]

## D. *Lobbying Fees*

■ The Court finds that defendants cannot recover fees for lobbying against the attempts to changes to the right of publicity statute. These fees were not incurred in defending their clients' interests against plaintiffs' suit in this Court. Defendants implicitly acknowledge that the two matters are separate by the use of two billing numbers. The Court deducts $91,000 from the portion of fees attributed to the right of publicity claim.

## IV. Conclusion

In sum, the Court transfers approximately fifty percent of the fees identified

---

**4.** As explained above these fees have previously been reduced by thirty percent to reflect

the Court's ruling on the trademark claims.

as "50% Right of Publicity" to those identified as "50% Trademark." The computer research fees are modified in the same manner. The trademark fees are reduced by approximately thirty percent to reflect the Court's finding that the false endorsement claim was not "groundless, unreasonable, vexatious or pursued in bad faith." The computer research fees are reduced by approximately twenty-five percent. The right of publicity fees are reduced by the approximate amount of fees attributed to lobbying against Senate Bill 209. (See Exhibit "A" attached).

The Court finds that the reasonable attorneys' fee for defending the right of publicity claim is $683,000. The Court finds that the reasonable attorneys' fee for defending the dilution and false advertising claims is $1,635,000.

Defendants' motion for attorneys' fees, filed July 10, 2000, is granted. Defendants are entitled to recover $2,308,000[5] in attorneys' fees.

## Exhibit "A"

| | | | | |
|---|---|---|---|---|
| Starting total | | | | $3,124,121.85 |
| | | | | |
| 100% Right of Publicity Claim | 232,777.50 | | 232,777.50 | 232,777.50 |
| 50% Right of Publicity Claim | 1,046,143.50 | | | |
| Less 50% = | | | 523,071.75 | 523,071.75 |
| Computer Research Sen. Bill | 1,609.73 | | 0.00 | 0.00 |
| Comp. Res. 50% Right of Pub. | 47,117.56 | | | |
| Less 50% = | | | 23,558.78 | |
| Less 25% for overhead = | | | | 17,669.08 |
| SUB–TOTAL (RIGHT OF PUBLICITY)= | | | | $ 773,518.33 |
| Less lobbying 91,000 | | | | $ 682,518.33 |
| | | | | *$ 683,000.00* |
| | | | | |
| 100% Trademark | 713,212.50 | | | |
| Less 30% for Endorsement claim = | | | 499,248.75 | 499,248.75 |
| 50% Trademark | 1,046,143.50 | | | |
| Plus 50% from R. of Pub. = | | | 1,569,215.25 | |
| Less 30% for Endorsement claim = | | | | 1,098,450.67 |
| Comp. Res. 50% Trademark | 47,117.56 | | | |
| Plus 50% from R. of Pub. = | | | 70,676.78 | |
| Less 30% for Endorsement claim = | | | 49,473.75 | |
| Less 25% for overhead = | | | | 37,105.31 |
| SUB–TOTAL (TRADEMARK CLAIMS) = | | | | $1,634,804.73 |
| | | | | *$1,635,000.00* |

$683,000
+1,635,000
- 10,000
$2,308,000

---

5. $683,000 + $1,635,000—$10,000 ("courtesy credit") = $2,308,000.