**James Jim BROWN, Plaintiff,**

**v.**

**ELECTRONIC ARTS, INC.,**
**et al., Defendants.**

Case No. CV 09–01598 DMG (RZx).

United States District Court,
C.D. California.

July 13, 2010.

R. Rex Parris, Alexander R. Wheeler, R. Rex Parris Law Firm, Lancaster, CA, for Plaintiff.

Alonzo B. Wickers, IV, Karen A. Henry, Davis Wright Tremaine LLP, Mark Steven Lee, Manatt Phelps and Phillips, Los Angeles, CA, for Defendants.

**ORDER RE DEFENDANT'S (1) MOTION FOR ATTORNEYS' FEES INCURRED IN CONNECTION WITH ANTI–SLAPP MOTION; AND (2) MOTION FOR ATTORNEYS' FEES INCURRED IN CONNECTION WITH LANHAM ACT CLAIM [50, 51]**

DOLLY M. GEE, District Judge.

This matter is before the Court on Defendant's Motions for Attorneys' Fees incurred in bringing its initial anti-SLAPP motion and in litigating Plaintiff's Lanham Act claim. The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78(b); C.D. Cal. L.R. 7–15. For the reasons set forth below, both Motions for Attorneys' Fees are DENIED.

**I.**

### *PROCEDURAL BACKGROUND*

This case arose out of a video game company's alleged unauthorized use of a retired sports celebrity's likeness in a series of sports-related video games. Briefly summarized, Plaintiff James "Jim" Brown is widely considered one of the best professional football running backs of all time, playing in the National Football League ("NFL") for nine seasons with the Cleveland Browns from 1957 to 1965. Defendant Electronic Arts, Inc. ("EA") develops and publishes various video games, including the popular *Madden NFL* series which, as previously described by the Court, consists of virtual players on cur-

rent NFL teams wearing the names and numbers of real-life players, as well as virtual players on historical teams who are anonymous, represented only by numbers and roster positions. The players compete in virtual stadiums, cheered on by virtual fans and coached by virtual coaches. A soundtrack, voice commentary, and sound effects accompany the action. (Sept. 23, 2009 Order at 2.)

Brown initially filed a lawsuit against EA in New York state court, which was later removed to federal court in the Southern District of New York in June 2008. That lawsuit alleged that the company used his likeness in the *Madden NFL* video games. After an exchange of correspondence with EA's lawyers, Brown voluntarily dismissed his lawsuit on November 10, 2008, and re-filed his action, with some amendments, in this Court on March 6, 2009. The essence of Brown's Complaint is as follows:

> EA misappropriated his name, identity, and likeness by including him in the games as a player on two "historic" teams: the 1965 Cleveland Browns team and the All Browns team. The [video game] character who purportedly represents Brown in the game is anonymous, and wears jersey number 37; [in real life,] Brown wore number 32 [on his jersey]. Brown alleges that EA altered the jersey numbers and made other superficial changes to the [video game] character intentionally, to avoid liability. Brown and his [video game] doppelgänger have "nearly identical" statistics.

(*Id.* at 3.)

Brown's Complaint contains four causes of action: a federal unfair competition claim on a theory of false endorsement under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), claims for invasion of privacy under California common law and California Civil Code section 3344, and a claim for an unfair business practice under California's Unfair Competition Law, Cal. Bus. & Prof.Code § 17200 *et seq.*

On April 22, 2009, EA filed both a motion to dismiss all of Brown's claims as well as a special motion to strike Brown's state law claims under California's anti-SLAPP statute. Despite being given multiple filing extensions by the Court, Brown never filed an opposition to either motion. As a result, the Court granted both motions on July 2, 2009, but nonetheless allowed Brown 20 days in which to file an amended complaint.

On July 22, 2009, Brown filed a First Amended Complaint, which included his previously filed Lanham Act claim as well as the same state law claims that were the subject of EA's special motion to strike. EA subsequently filed another motion to dismiss all the counts in the First Amended Complaint and another special motion to strike the state law causes of action. Brown filed an opposition to these motions on August 31, 2009.

In its September 23, 2009 Order, the Court granted EA's motion to dismiss Brown's Lanham Act false endorsement claim, finding that, even if EA used Brown's likeness in its video games, such use was protected under the First Amendment due to the game being an expressive work. Given that the Lanham Act claim was Brown's sole basis for the Court possessing original jurisdiction over the matter, the Court did not rule on the merits of EA's special motion to strike the remaining state law claims; instead, the Court declined to exercise its supplemental jurisdiction over those claims. (*See* Sept. 23, 2009 Order at 9.)

EA filed a Motion for Attorneys' Fees incurred in connection with Plaintiff's Lanham Act claim ("Lanham Fee Mot.") and a Motion for Attorneys' Fees incurred in connection with its anti-SLAPP motion ("Anti–SLAPP Fee Mot.") on October 23,

2009. Brown filed his Oppositions to the fee motions on November 9, 2009. EA filed its Replies on November 16, 2009. This case was transferred to the undersigned on January 27, 2010.

The question now presented for the Court is whether Brown's Lanham Act claim was either "groundless" or "vexatious" so as to warrant awarding fees to EA, and whether EA was a "prevailing" party, as that term is understood under California Civil Procedure Code section 425.16(c).

## II.

### FEES INCURRED IN LITIGATING THE LANHAM ACT CLAIM

 The Lanham Act provides that in "exceptional cases" the court "may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). The Ninth Circuit construes the "exceptional cases" requirement narrowly. *Classic Media, Inc. v. Mewborn,* 532 F.3d 978, 990 (9th Cir.2008). It can be met "when the nonprevailing party's case is groundless, unreasonable, vexatious, or pursued in bad faith." *Id.* (quoting *Gracie v. Gracie,* 217 F.3d 1060, 1071 (9th Cir.2000); internal quotation marks omitted).

Here, EA argues that Brown's Lanham Act claim was both groundless, as it "had no legal basis," and vexatious, in that the tactics Brown used to litigate the claim "unreasonably increased the burden of defending the lawsuit." (Lanham Fee Mot. at 1). The Court addresses these points in turn.

### A. Brown's Lanham Act Claim Was Not Groundless

 A claim is considered factually groundless where there is "no reasonable basis to believe" in the factual allegations underlying the claim and is considered legally groundless where there is "no legal basis" for the claim itself, which instead rests on "absurd" or "just short of frivolous" contentions of law. *Cairns v. Franklin Mint Co.,* 115 F.Supp.2d 1185, 1188–89 (C.D.Cal.2000). Thus, if the claim raises "debatable issues of law and fact," then it cannot be said that the case is an "exceptional" one warranting an award of attorney fees. *Stephen W. Boney, Inc. v. Boney Servs., Inc.,* 127 F.3d 821, 827 (9th Cir.1997). "This creates the possibility of an award of attorney's fees to a prevailing defendant because of the objective lack of merit of the lawsuit even though the plaintiff subjectively and honestly, but mistakenly, believed it to be a meritorious case." 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 30:101 (4th ed. 2009).

As "evidence" that Brown's Lanham Act claim was legally groundless, EA points to language in the Court's September 23, 2009 Order granting its motion to dismiss as suggesting that to be the case, which is allegedly "bolstered" by the fact that Brown did not even address EA's First Amendment defense in his opposition. (Lanham Fee Mot. at 4.) The Court finds neither argument persuasive.

 As a preliminary matter, the sheer fact that a motion to dismiss is granted does not suffice to show that the claim was groundless or was not a colorable claim. Otherwise, *every* case in which a motion to dismiss a Lanham Act claim was granted would be considered an "exceptional" case and soon the exceptional would become the ordinary.

 Parsing the Court's choice of words in its prior Order, EA reads too much into them. The Court's notation that EA's use of Brown's likeness was "clearly relevant" to its *Madden NFL* video game (Sept. 23, 2009 Order at 8) simply answered the question posed by the Ninth Circuit's relevant First Amendment test that the Court applied; it in no way implied or even sug-

gested that taking a position to the contrary was somehow groundless.

EA's citation to the Court's comment that "it would require a leap of logic to conclude that the anonymous, mis-numbered player's presence in the games equates to Brown's endorsement of the games" (*id.* at 9) is unconvincing for a different reason. Although the Court's characterization of Brown's argument on this particular point does indeed call into question its strength, Brown did not need to win on each and every point in order to stymie EA's use of the First Amendment as a shield from his Lanham Act claim; succeeding on only one of them would have sufficed. To that end, all of the language from the September 23, 2009 Order cited by EA concerns application of the *Rogers* two-pronged test, a test that is not even triggered until after a legal determination is first made that the work in question qualifies as an artistic expressive work. *See E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099–1100 (9th Cir.2008) (noting that the *Rogers* two-pronged test applies only after a determination that the item in question is an artistic work); (*see also* Sept. 23, 2009 Order at 5 ("As a preliminary matter, it is important to establish the type of speech at issue; the type of speech determines the appropriate First Amendment test. For example, non-commercial speech receives more robust constitutional protection.")).

The legal fault with Brown's position cited to by EA concerned the two prongs of the *Rogers* test *once it had been already determined by the Court that the test should be applied to EA's NFL Madden games in the first instance.* Thus, any gaps in Brown's position on this front would not have made his Lanham claim groundless unless it could also be shown that his position with respect to whether to invoke *Rogers*' heightened First Amendment defense was likewise faulty. It was

on the preliminary question of whether the *Rogers* test (in lieu of that applied to commercial speech) should apply that Brown focused his attention in seeking to defeat EA's First Amendment defense and it is there that EA has been unable to point to any language from the Court's opinion supporting EA's contention that the legal debate on this preliminary and necessary question was groundless.

As for EA's characterization of Brown's opposition to the motion to dismiss, here too it makes too much of what was and what was not in his papers. EA alleges that Brown "never addressed the controlling law in this Circuit, which is the test set forth in *E.S.S.*" (Lanham Fee Reply at 5–6 (emphasis omitted).) That characterization is simply misdirected. In his opposition, Brown attacked EA's First Amendment defense, but not by contesting the points contained in the *Rogers* two-pronged test (as correctly pointed out by EA), but again by arguing that the test did not even apply because *NFL Madden* was not an expressive work as it "creates no fanciful settings or storylines" but "merely recreates the activities of actual football games." (Anti-SLAPP Fee Mot., Ex. R at 220.) Thus, EA's sole focus on the *Rogers* test is misplaced. Reading the Court's September 23, 2009 Order, one is hard-pressed to find any language suggesting that Brown had no grounds to contest the expressive nature of EA's work. As the Court observed, the *E.S.S.* case did not decide whether all video games can be considered artistic speech and thus deserving of the *Rogers* two-pronged test for First Amendment protection. *See E.S.S.*, 547 F.3d at 1099–1100 ("ESS concedes that the Game is artistic and that therefore the *Rogers* test applies.").

Indeed, it was that very question and whether EA's *NFL Madden* games fit within that framework that remained in

doubt before this suit was litigated. In resolving the question in its September 23, 2009 Order, the Court relied upon an out-of-district case, *Romantics v. Activision Publ'g, Inc.*, 574 F.Supp.2d 758 (E.D.Mich. 2008). (*See* Sept. 23, 2009 Order at 7 ("Here, the *Madden NFL* series of sports-based games is creative in different ways than some of the other video games that courts have held to be artistic speech. For example, in *E.S.S.*, the game contained creative elements such as a story line and satires of real cities. However, that difference is not dispositive. Video games do not have to be stories to qualify as expressive works.").) Under such circumstances, the Court does not find that Brown's decision to go forward with his false endorsement Lanham Act claim was groundless.

### B. *Brown's Claim Was Not Vexatious*

■ Another basis for an award of attorney's fees to a prevailing defendant for a Lanham Act claim is that the plaintiff has either initiated or conducted the litigation vexatiously or unjustifiably. Here, EA protests the fact that Brown dragged his feet in filing an opposition to its motions, even waiting until after dismissal of his initial complaint pursuant to an unopposed motion to dismiss.

■ It is true that Brown's failure to file an opposition to EA's initial motion to dismiss added to the costs EA incurred in litigating the Lanham Act claim, but such an increase is itself insufficient to justify awarding attorney's fees. Again the standard is one of vexatiousness, not demonstrations of instances of dilatoriness, to render the case exceptional. EA argues that the facts in this case are indistinguishable from those confronted by the district court in *Scientific Weight Loss, LLC v. U.S. Medical Care Holdings, LLC*, No. CV 08–2852 PSG (FFMx), 2009 WL 2151365 (C.D.Cal. July 15, 2009). In that case, the fault was that the plaintiff litigated the matter too much (specifically, re-litigating motions that had been denied by the court with notations that the motions were without merit), whereas here the complaint is that Brown did not seek to expeditiously litigate his claim. Ultimately, the Court finds *Scientific Weight Loss* distinguishable.

There, the court held that the plaintiffs' "repeatedly filing" TROs and a motion for preliminary injunction in "close succession" was vexatious because the court had previously denied those motions as being "baseless," "padded with wholly irrelevant facts and arguments and accompanied by voluminous documents," which ultimately resulted in the plaintiffs' counsel being sanctioned for Rule 11 violations. *Id.* at *4–5. Thus, it was not the added expense itself that was enough in *Scientific Weight Loss* to lead to a finding of vexatiousness, but also a finding that the papers submitted were themselves so full of "frivolous" and "groundless" arguments that the only conclusion to be divined from their repeated filing was that they were only submitted to add to the other side's expense. *See id.* at *5 ("[T]he Court previously opined that Plaintiffs' litigation tactics suggested an 'improper purpose.'"). That same showing is not made here by EA. Instead, EA simply points to the added costs, but nowhere seeks to demonstrate that those delays were associated with a plan by Brown to simply add costs to EA through improper filings.

Therefore, the Court DENIES the motion for Lanham Act attorneys' fees.

### III.

### *ANTI–SLAPP MOTION AGAINST BROWN'S INITIAL COMPLAINT*

■ "The purpose of the anti-SLAPP statute is 'to allow early dismissal

of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation.'" *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1090 (9th Cir.2004) (quoting *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir.2003)). To that end, California law provides that "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal.Civ.Proc.Code § 425.16(c)(1). "[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims and are entitled to attorneys' fees and costs when they prevail." *Verizon*, 377 F.3d at 1091. This raises the question of whether EA "prevailed" on its special motion to strike Brown's *initial* complaint. The motion was unopposed, and was accordingly granted by the Court but Brown was provided the opportunity to file an amended complaint.

The concept of what renders a litigant a prevailing party is to be broadly construed. *See* Cal.Civ.Proc.Code § 425.16(a); *see also Lin v. City of Pleasanton*, 176 Cal.App.4th 408, 425–26, 96 Cal.Rptr.3d 730 (2009) ("The term 'prevailing party' must be 'interpreted broadly to favor an award of attorney fees to a partially successful defendant.'"), *review denied*, No. S175754 (Cal. Oct. 14, 2009). Nonetheless, California courts have recognized that there are limits to such a designation. Most importantly for purposes of this case, a party is not considered to have "prevailed" where "the *results* of the motion were so insignificant that the party did not achieve any practical benefit from bringing the motion." *Mann v. Quality Old Time Serv., Inc.*, 139 Cal.App.4th 328, 340, 42 Cal.Rptr.3d 607 (2006) (emphasis added); *see also Moran v. Endres*, 135 Cal.App.4th 952, 956, 37 Cal.Rptr.3d 786 (2006) ("[W]hen a defendant cannot in any realistic sense be said to have been successful [on an anti-SLAPP motion], fees need not be awarded."). The crucial question is one of practicality; did anything of substance (technical victories notwithstanding) change in the posture of the case and the claims being lodged against the defendant after it brought the special motion to strike than were in existence beforehand. As one state court explained:

> The possible recovery against defendants did not change [as a result of bringing the anti-SLAPP motion]. The factual allegations which defendants had to defend did not change. The work involved in trying the case did not change. Defendants' burden concerning their jurisdictional defense did not change. The case was essentially the same after the ruling on the special motion to strike as it was before. The results of the motion were minimal and insignificant, fully justifying the court's finding that defendants should not recover fees.

*Moran*, 135 Cal.App.4th at 955, 37 Cal. Rptr.3d 786.

Noting that his initial complaint was dismissed but with leave to amend, and in light of the fact that he did in fact amend his complaint to re-assert the relevant claim, Brown argues that EA did not "prevail" in its motion. (*See* Anti–SLAPP Fee Opp'n at 5 ("[T]he litigation continued unchanged after the Court's July 2, 2009 Order and EA's first anti-SLAPP motion.").) In short, the claims lodged against EA remained intact and largely unchanged after EA's first motion to strike. EA seeks to challenge the correctness of this conclusion by arguing that the state cases cited to by Brown are "factually distinguishable." (Anti–SLAPP Fee Reply at 2.) For instance, with respect to *Moran*, EA correctly notes that in that case the defendant's special motion to strike was only successful in obtaining the dismissal of one of the eleven state causes of action lodged against it, and even then,

the claim dismissed was clearly not one for which a cause of action even existed. Here, EA observes its motion to strike was successful against all of Brown's claims.

EA's "success," however, was relative. True, EA had its motion to strike all of the claims "granted," but at the same time, the Court's Order negated the import of that decision by allowing Brown the chance to re-allege all of those same claims against EA, an opportunity of which he quickly availed himself. It is that practical-based consideration which lies at the core of determining whether a party "prevails" under section 425.16. On this point, Brown is indeed correct that the posture of the case changed hardly at all following the resolution of EA's first motion to strike. Nonetheless, EA seeks to tout its "technical" victory as the equivalent of a full-scale dismissal. This is precisely the proposition that the court in *Mann* rejected.

▮ EA's response to this point is to diminish the impact of Brown's being afforded leave to amend his initial complaint as the product of a peculiar procedural wrinkle found in federal—but not state—law: specifically, the collision of the provisions of the anti-SLAPP statute for early dismissal of suits with the liberal policies favoring allowance for the amendment of complaints embodied in Federal Rule of Civil Procedure 15(a). *See Verizon*, 377 F.3d at 1091 ("[G]ranting a defendant's anti-SLAPP motion to strike a plaintiff's initial complaint without granting the plaintiff leave to amend would directly collide with Fed.R.Civ.P. 15(a)'s policy favoring liberal amendment."). EA posits that the only reason the Court permitted Brown the opportunity to amend his complaint so that he could re-allege the same claims against it was because the Ninth Circuit's decision in *Verizon* mandated that the Court do so, not because the Court found there was any potential merit

in those claims that was salvageable by further amendment. According to EA:

> What [Brown] fails to recognize is that the Ninth Circuit has held [in *Verizon*] that a court ordinarily must give leave to amend when it grants an anti-SLAPP motion that targets a plaintiff's initial complaint. Thus, the fact that this Court gave [Brown] leave to amend when it granted EA's anti-SLAPP motion does not foreclose a fee award. Indeed, if [Brown]'s argument were accepted, then a defendant could not recover fees incurred in connection with a special motion to strike an initial complaint. This result would be flatly inconsistent with the language of [California] Code of Civil Procedure section 425.16(c), the policy underlying the statute, and the Ninth Circuit's holding that the fee-shifting provision does *not* conflict with the Federal Rules.
>
> . . . .
>
> . . . . If, as the Ninth Circuit has suggested [in *Verizon*], a district court must give leave to amend when it grants a special motion to strike an initial complaint, and if, as [Brown] contends, a defendant who prevails on an anti-SLAPP motion cannot recover fees if the court gives leave to amend, then when could a . . . defendant recover fees for an initial anti-SLAPP motion? Under [Brown]'s interpretation of the statute, the answer may be "never." But this is not—and should not be—the law. . . .

(Reply at 1–3 (emphasis added; citations omitted)).

The Ninth Circuit answered the rhetorical question posed by EA in *Verizon*. The court noted that, should a plaintiff refuse to re-assert the state law claims in its amended complaint as a result of the bringing of the initial special motion to strike, then the purposes of the state stat-

ute would still be served, thereby obviating the need to award fees otherwise available in the anti-SLAPP statute. *See Verizon,* 377 F.3d at 1091 ("[T]he purpose of the anti-SLAPP statute, the early dismissal of meritless claims, would still be served if plaintiffs eliminated the offending claims from their original complaint."). With regard to the present situation, where the plaintiff re-alleges the same state claims in its amended complaint, the Ninth Circuit likewise observed that "the anti-SLAPP remedies remain available to defendants." *Id.* EA, however, would have this Court not only award the fees and costs it incurred in successfully dismissing any state law claims contained in the amended complaint but also retroactively award it the fees and costs it incurred with respect to the earlier initial complaint. The Ninth Circuit has foreclosed this result. The Ninth Circuit made this point clear in a later decision, characterizing this portion from its *Verizon* decision as standing for the proposition that "a *first amended complaint*" remained "subject to anti-SLAPP remedies," including the provision of fees and costs. *Gardner v. Martino,* 563 F.3d 981, 991 (9th Cir.2009) (emphasis added).

██ Here, EA cannot bring a request for attorney's fees for the dismissal of the state law claims contained in Brown's amended complaint because the Court, as it explicitly noted in its September 23, 2009, decision, did not reach the "merits" of those claims but instead simply declined to address them, by refusing to exercise its supplemental jurisdiction over them. As of this time, unless otherwise precluded (for instance, for statute of limitations reasons), Brown remains free to re-file those claims against EA in state court, if he has not done so already. Regardless, EA has not sought the fees and costs it incurred in bringing a second special motion to strike, but only for that incurred with its first special motion to strike.

Accordingly, EA was not a prevailing party on its motion to strike the state law claims in Brown's initial complaint, and the motion for anti-SLAPP attorneys' fees is DENIED.

## IV.

### *CONCLUSION*

In light of the foregoing:

1. the Court DENIES EA's Motion for Attorneys' Fees incurred in litigating Brown's Lanham Act claim, because his claim was neither groundless nor vexatiously litigated; and

2. the Court DENIES EA's Motion for Attorneys' Fees incurred in bringing its special motion to strike Brown's initial complaint, on the ground that EA was not a "prevailing" party within the meaning of Cal.Civ.Proc. Code § 425.16(a).

IT IS SO ORDERED.