**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 13-3305 & 14-1572
_____


FAIR WIND SAILING, INC.,
                                        Appellant
                    v.

H. SCOTT DEMPSTER, Individually and Doing Business as
VIRGIN ISLANDS SAILING SCHOOL and VIRGIN
ISLANDS SAILING SCHOOL
_____


On Appeal from the District Court of the Virgin Islands
(D.C. No. 11-cv-00055)
District Judge: Honorable Curtis V. Gómez
_____


Argued: May 13, 2014


Before: RENDELL, FUENTES, and GREENAWAY, JR.,
*Circuit Judges*

(Filed:  September 4, 2014)
_____

Michael C. Quinn, Esq.
Stefan B. Herpel, Esq. [ARGUED]
Gregory H. Hodges, Esq.
Dudley, Topper and Feuerzeig, LLP
P.O. Box 756
St. Thomas, VI 00804-0756
    *Attorneys for Appellant*

Ravinder S. Nagi, Esq.
Lisa Michelle Kömives, Esq. [ARGUED]
BoltNagi PC
5600 Royal Dane Mall, Suite 21
St. Thomas, VI 00802
    *Attorneys for Appellees*

_____

OPINION

_____


FUENTES, *Circuit Judge*:

Fair Wind Sailing, Inc. brought this action against Virgin Island Sailing School ("VISS") and its co-founder Scott Dempster, alleging, in relevant part, that Defendants infringed upon Fair Wind's "trade dress" in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq*., and unjustly enriched themselves by copying Fair Wind's business. The District Court dismissed Fair Wind's trade dress and unjust enrichment claims, and subsequently awarded Defendants fees under Virgin Islands law. Fair Wind challenges both the dismissal of its claims and the award of attorneys' fees.

The District Court properly concluded that Fair Wind failed to state claims for trade dress infringement and unjust enrichment. As to the former claim, Fair Wind has failed to adequately explain what "dress" it seeks to protect, and its trade dress, as pleaded, is functional in nature. As to the latter claim, Fair Wind has not pleaded with sufficient particularity in what manner Defendants have been unjustly enriched. We therefore affirm the dismissal of both claims.

However, we agree with Fair Wind that the District Court improperly awarded fees for the entirety of the litigation under Virgin Islands law. While it would have been appropriate for the District Court to award reasonable fees accrued defending the territorial law claims, an award for the portion of the fees accrued defending the Lanham Act claim was appropriate only to the extent that this was an "exceptional" case. 15 U.S.C. § 1117(a). The District Court did not decide whether this case was an "exceptional" one. We therefore remand the fee dispute for further proceedings. In the wake of new Supreme Court precedent, we take this opportunity to amend our recently-abrogated jurisprudence on the standard for finding "exceptionality" under § 35(a) of the Lanham Act.

I.

A.

The complaint alleges the following facts, which we assume to be true and construe in the light most favorable to the plaintiff. *See Ashcroft v. Iqbal,* 556 U.S. 662, 678-80 (2009).

3

Fair Wind is a Michigan corporation that owns sailing schools throughout the United States, including one in St. Thomas, Virgin Islands. The St. Thomas school exclusively uses catamarans.[1]

In July 2007, Fair Wind hired Larry Bouffard as a captain and sailing instructor for its St. Thomas school. Bouffard entered into a contract with Fair Wind, which contained a provision precluding Bouffard from joining a Fair Wind competitor within 20 miles of the St. Thomas school for two years after the end of his employment with Fair Wind. A popular instructor, Bouffard stayed with Fair Wind for over three years.

In June 2010, Bouffard introduced Dempster to Fair Wind as a potential instructor and captain. Relying on Bouffard's assurance that Dempster was qualified for the post, Fair Wind hired Dempster for a probationary two-week period. Fair Wind was dissatisfied with Dempster's performance, and declined to retain Dempster at the end of those two weeks.

Shortly after Fair Wind terminated Dempster, Bouffard resigned. At or about this time, however, Dempster and Bouffard decided to open a sailing school together in St. Thomas. By the following winter, Dempster and Bouffard's

---

[1] For our landlocked readers, a catamaran is a boat "with twin hulls and usually a deck or superstructure connecting the hulls." *Catamaran Definition*, Merriam-Webster.com, http://www.merriam-webster.com/dictionary/catamaran (last visited July 9, 2014).

4

school, VISS, was up and running, in direct competition with Fair Wind. Opening VISS violated Bouffard's two-year non-compete agreement with Fair Wind.

Since its inception, VISS has copied Fair Wind's St. Thomas school in several respects. VISS employs 45-foot catamarans, the same boats used by Fair Wind. VISS also uses teaching curriculum and itineraries identical to those used by Fair Wind, and employs the same procedures for student feedback. The marketing on VISS's website is identical to Fair Wind's marketing. Additionally, the VISS website contains a picture of a catamaran belonging to Fair Wind, includes "student testimonials" from students who took classes with Dempster while he worked for Fair Wind, and mentions Bouffard's experience teaching "[o]ver the last year," presumably in reference to his time teaching at Fair Wind. First Am. Compl. ¶ 32.

Fair Wind alleges that "[s]ince VISS began competing with Fair Wind, Fair Wind has lost considerable business and reputation." *Id.* ¶ 35. It also alleges that "Dempster and VISS have been enriched by their improper and unjustified conduct." *Id.* ¶ 48.

B.

Fair Wind filed an action against Dempster and VISS in the District Court of the Virgin Islands. The complaint, as amended shortly thereafter, alleged three claims against Dempster and Fair Wind: (1) a "trade dress" infringement claim under § 43(a) of the Lanham Act; (2) a common-law tortious interference claim; and (3) a common-law unjust enrichment claim. VISS filed a motion to partially dismiss

5

the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Fair Wind failed to state claims for trade dress infringement or unjust enrichment.

The District Court concluded that Fair Wind had failed to state claims for either trade dress infringement or unjust enrichment. As to the trade dress claim, the District Court concluded that the complaint had several dispositive flaws. First, the District Court explained that Fair Wind had failed to allege facts about its business that "amount[ed] to its trade dress." *Fair Wind Sailing, Inc. v. Dempster*, No. 2011-55, 2013 WL 1091310, at *4 (D.V.I. Mar. 15, 2013). "Without knowing the precise product features that Fair Wind seeks to protect" as trade dress, the District Court "struggle[d] to undertake a productive Rule 12(b)(6) analysis." *Id.* Second, assuming that the product features at issue amounted to a trade dress, the Court determined that the complaint was "devoid of any allegations that [these features were] inherently distinctive or ha[d] acquired any secondary meaning." *Id.* at *4-5. Third, the District Court determined that the product features comprising Fair Wind's alleged trade dress were "functional" and therefore fell beyond the protections of the Lanham Act. *Id.* at *5-6. With respect to the unjust enrichment claim, the District Court concluded that Fair Wind had failed to "allege any facts to support the first element required for an unjust enrichment claim—that the defendant was enriched." *Id*. at *7. Accordingly, the District Court granted VISS's motion to dismiss in its entirety. In response, Fair Wind voluntarily dismissed its remaining claim for tortious interference, making the judgment final and appealable. *See Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 246 (3d Cir. 2013).

6

Thereafter, Defendants moved for $41,783 in attorneys' fees under § 35(a) of the Lanham Act and Title 5, section 541 of the Virgin Islands Code. This constituted the "total amount of legal fees incurred by Defendants in this matter" over the course of the litigation. App. 64. Relying solely on the Virgin Islands fee statute, the District Court concluded that Defendants were entitled to a "fair and reasonable award of attorney's fees" for their effort defending the entirety of this case. *Fair Wind Sailing, Inc. v. Dempster*, No. 2011-55, 2014 WL 886832, at *1 (D.V.I. Mar. 6, 2014). After concluding that a portion of the fees sought was unreasonably expended, the District Court awarded Defendants fees in the amount of $36,347. *Id.* at *3.

Fair Wind filed separate, timely appeals of both the dismissal order and the fees order, which were subsequently consolidated for disposition.[2]

## II.

We first consider Fair Wind's trade dress claim. Like the District Court, we conclude that Fair Wind has failed to properly state a claim for trade dress infringement. We therefore affirm the District Court's dismissal of the claim.[3]

---

[2] The District Court had subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). We have appellate jurisdiction under 28 U.S.C. § 1291.

[3] In deciding a motion to dismiss under Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

7

Section 43(a) of the federal Lanham Trademark Act sets forth the standard for infringement of unregistered trademarks. It provides in relevant part that:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which — (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any

---

complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

> person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Section 43(a) protects from deceptive imitation not only a business's trademarks, but also its "trade dress." 15 U.S.C. § 1125(a)(3); *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.763, 776 (1992) (Stevens, J., concurring). "Trade dress has been defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000). In short, trade dress is the overall look of a product or business. *See, e.g.*, *Taco Cabana, Inc.*, 505 U.S. at 765 (the decor of a restaurant); *Am. Greetings Corp. v. Dan-Dee Imports, Inc.*, 807 F.2d 1136, 1140 (3d Cir. 1986) (a line of teddy bears with "tummy graphics"); *see also Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1037 (2d Cir. 1992) (graphics and arrangement of elements on a box of Excedrin).

"The purpose of trade dress protection is to 'secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *McNeil Nutritionals, LLC v. Heartland Sweeteners*, *LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (quoting *Shire US Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003)). Trade dress protection does not shield businesses from plagiarism. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 36 (2003). Indeed, "[t]rade dress protection must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *TrafFix Devices*, *Inc. v. Mktg. Displays,*

*Inc.*, 532 U.S. 23, 29 (2001); *see also Thomas & Betts Corp. v. Panduit Corp.*, 65 F.3d 654, 657 (7th Cir. 1995) ("Copying is not only good, it is a federal right—a necessary complement to the patent system's grant of limited monopolies."). Thus, the law does not afford every combination of visual elements exclusive legal rights. Instead, "trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the product's source." *Shire US*, 329 F.3d at 353.

A plaintiff must prove three elements to establish trade dress infringement under the Lanham Act: "(1) the allegedly infringing design is nonfunctional; (2) the design is inherently distinctive or has acquired secondary meaning; and (3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals*, 511 F.3d at 357. In addition to satisfying these three elements, it is the plaintiff's duty to "articulat[e] the specific elements which comprise its distinct dress." *See Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997); *see also* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (4th ed. 2014) ("[T]he discrete elements which make up the [trade dress claim] should be separated out and identified in a list.").[4] This allows the district court to ensure that the claim

---

[4] For example, in *Rose Art Industries*, the plaintiff claimed that the following elements comprised its trade dress:

> (1) a prominent band that is either straight or wavy and often black in color that cuts across the middle of the front of the package, extending to the sides with the words

is not "pitched at an improper level of generality, i.e., the claimant [does not] seek[] protection for an unprotectable style, theme or idea." *Landscape Forms*, 113 F.3d at 381. Even before it reaches the question of protectability, however, a district court should scrutinize a plaintiff's description of its trade dress to ensure itself that the plaintiff seeks protection

---

> "CRAYONS" or "WASHABLE MARKERS" or other descriptive term in white letters imprinted on the band (the "Band and Letter feature"); (2) a yellow background on the top of the package with a contrasting background color (either red, purple, pink, or a combination of purple fading to red) on the bottom of the package; and (3) a prominent display of the Rose Art logo in golden yellow (either foil or print) or red, either with or without a rainbow "swish" design behind the logo on the front of the package. In addition, in its presentation to the District Court, Rose Art included three other elements in its claim of infringement: (1) the statement "since 1923"; (2) the statement on the front of the package that the product is "Certified Non–Toxic;" and (3) the sentence inviting consumer comments, "Rose Art invites your comments and questions about this product. Please write to Rose Art Industries, Inc., Consumer Affairs, 6 Regent St., Livingston, NJ 07039 or call 1–800–CRAYONS."

235 F.3d at 169.

of visual elements of its business. As the Sixth Circuit has noted, "any 'thing' that dresses a good can constitute trade dress." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 630 (6th Cir. 2002). However, the "thing" *must* "dress[] a good." *Id.* That is, the alleged trade dress must create *some* visual impression on consumers. Otherwise, there is simply no "dress" to protect.

According to Fair Wind, its trade dress is "the combination of its choice to solely employ catamaran vessels" and its "unique teaching curriculum, student testimonials, and registered domain name," which "all combine to identify Fair Wind's uniquely configured business to the general public." Appellant's Br. at 20-21.[5] By its own terms, then, Fair Wind's "trade dress" is simply a hodgepodge of unconnected pieces of its business, which together do not comprise any sort of composite visual effect. Fair Wind is not arguing that VISS stole Fair Wind's "look" in order to lure away customers. In fact, several of the elements of Fair

---

[5] Although Fair Wind asserts in its briefs on appeal that VISS's domain name is nearly identical to Fair Wind's, the complaint makes no such allegation, nor can one reasonably infer such an allegation. While the complaint mentions VISS's domain name, *see* First Am. Compl. ¶ 5, it never discusses Fair Wind's web address. Because we cannot consider allegations outside the complaint, the similarity in the parties' domain names cannot play a part in our analysis. In any event, the fact that the parties have similar web addresses, even if properly pleaded, does not alter our conclusion that Fair Wind has failed to allege a cognizable trade dress.

Wind's trade dress—such as the teaching curriculum—are not clearly visual aspects of the business at all.[6] Rather, Fair Wind asserts that Defendants have harmed Fair Wind "by copying every material element of Fair Wind's business and presenting [it to] the public." *Id.* at 15. This claim has little to do with trade dress.

Perhaps realizing its failure to plead a cognizable trade dress, Fair Wind pivoted at oral argument, placing its "web design" at the center of the trade dress claim. But the complaint does not enumerate what specific elements of its website comprise a distinctive trade dress or that its site has any distinctive ornamental features. *Cf.* Xuan-Thao N. Nguyen, *Should It Be a Free for All? The Challenge of Extending Trade Dress Protection to the Look and Feel of Web Sites in the Evolving Internet*, 49 Am. U. L. Rev. 1233, 1236, 1240 (2000) (arguing that a combination of a website's "color, graphics, animations, designs, layout, [and] text" may qualify for trade dress protection).

Indeed, Fair Wind has failed to allege any facts at all relating to the substance of its own website. True, the

---

[6] We do not suggest that the curriculum of a sailing school, if part of, for example, an overall look of a schoolhouse or a website, could not be part of a business's trade dress. *Cf. Fuddruckers, Inc. v. Doc's B.R. Others, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987) (noting that a menu, in combination with other aspects of a restaurant's decor, can constitute protectable trade dress). But the complaint does not in any way indicate that Fair Wind's curriculum creates any kind of visual impression. It is not even clear from the complaint that Fair Wind's curriculum is something that can be seen.

complaint suggests that VISS's website contains a picture of a Fair Wind catamaran, as well as student feedback mechanisms, curriculum, and itineraries identical to those used by Fair Wind. First. Am. Compl. ¶ 29. But the fact that VISS has copied aspects of Fair Wind's business and placed them on its website says nothing about the content of Fair Wind's website, let alone whether Fair Wind's website has a composite look that might constitute a trade dress.

Because Fair Wind has failed to give Defendants adequate notice of what overall look it wishes to protect, its trade dress claim cannot survive Defendants' motion to dismiss. *See Twombly*, 550 U.S. at 555.

But even assuming that Fair Wind had adequately stated the overall design it seeks to protect, its alleged "trade dress" is clearly functional, and therefore not protectable. A functional feature is one that is "essential to the use or purpose of the article," "affects the cost or quality of the article," or one that, if kept from competitors, would put them at a "significant non-reputation-related disadvantage." *TrafFix*, 532 U.S. at 33. By contrast, a feature is nonfunctional where it "is unrelated to the consumer demand . . . and serves merely to identify the source of the product" or business. *Prufrock Ltd., Inc. v. Lasater*, 781 F.2d 129, 133 (8th Cir. 1986). Student feedback procedures, catamarans, teaching itineraries, and curriculum all affect the quality of Fair Wind's business. They play a critical role in the consumer demand for Fair Wind's services, rather than merely identifying Fair Wind as the source of the sailing instruction. *Cf. TrafFix*, 532 U.S. at 32 (holding that the dual-spring design was not protectable because it had a purpose "beyond serving the purpose of informing consumers

14

that the sign stands are made by" the plaintiff).  Thus, Fair Wind's alleged dress is plainly functional.

Rather than argue that the particular features of its "trade dress" are nonfunctional, Fair Wind argues that the various functional aspects of its business combine to create something nonfunctional.  Fair Wind's argument rests on *Clicks Billiards, Inc. v. Sixshooters, Inc.*, where the Ninth Circuit concluded that the sum of particular functional elements in a pool hall, such as its counters and lighting, could amount to a nonfunctional look.  *See* 251 F.3d 1252, 1261-62 (9th Cir. 2001). The *Clicks* court explained, "[t]he fact that individual elements of the trade dress may be functional does not necessarily mean that the trade dress *as a whole* is functional; rather, functional elements that are separately unprotectable can be protected together as part of trade dress." *Id.* at 1259 (internal quotation marks omitted); *see also id.* at 1261 ("To be sure, many of these elements, considered in isolation, may be functional.  The issue, however, is whether, taken as a whole, the overall look and feel of the establishment is functional.").  The plaintiff in *Clicks* offered evidence that its "composite tapestry of visual effects" had become associated with its pool halls and not others.  *See id.* at 1259, 1261-62.  Thus, the Ninth Circuit concluded that the plaintiff's trade dress claim should survive summary judgment.

In stark contrast to the plaintiff in *Clicks*, Fair Wind has not explained how the identified functional elements achieve a nonfunctional "composite tapestry of visual effects."  *Id.* at 1259.  Fair Wind has not suggested, in its complaint or elsewhere, that its business has a distinctive appearance at all.  *Clicks* is therefore inapposite.

15

In sum, Fair Wind has failed to allege a cognizable trade dress. Moreover, to the extent that the complaint alleges that Fair Wind's boats, curriculum, itineraries, and student feedback procedures are its trade dress, that trade dress is functional, and therefore not protectable. Fair Wind's claim does not hold water.

III.

Fair Wind next argues that the District Court improperly dismissed its unjust enrichment claim by employing too exacting a pleading standard. Specifically, the District Court concluded that Fair Wind had failed to properly plead that Defendants had been enriched by their conduct. We agree with the District Court that Fair Wind has failed to state a claim for unjust enrichment. We therefore affirm.

To recover for unjust enrichment under Virgin Islands law, a plaintiff must prove that (1) the defendant was enriched, (2) the enrichment was at the plaintiff's expense, and (3) the circumstances were such that, in equity and good conscience, the defendant should return the money or property to the plaintiff. *Martin v. Martin*, 54 V.I. 379, 393-94 (V.I. 2010). To state the obvious, a defendant's enrichment is critical to the success of an unjust enrichment claim. *See* Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d. ("Restitution is concerned with the receipt of benefits that yield a measurable increase in the recipient's wealth.").

The premise of Fair Wind's unjust enrichment claim is that Defendants gained, and Fair Wind lost, by Defendants "trading on Fair Wind's trade dress, proprietary information

16

and trade secrets." First Am. Compl. ¶ 50. As the District Court noted, however, the complaint contains no facts concerning *in what respect* Defendants were enriched, other than the conclusory assertion that "Dempster and VISS have been enriched by their improper and unjustified conduct." *Id.* at ¶ 48.

At the pleadings stage, it is often not possible for a plaintiff to recount with specificity to what extent a defendant was enriched by her misconduct. That is what discovery is for. At the same time, however, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a plaintiff to plead *some* factual allegations in order to survive a motion to dismiss. *See Twombly*, 550 U.S. at 557; *Iqbal*, 556 U.S. at 678. Pleading the "mere elements" of a cause of action will not do. *Phillips*, 515 F.3d at 233. Here, Fair Wind has failed to even allege that Defendants' business accrued additional profits by poaching Fair Wind's proprietary information and trade secrets. That may have satisfied Rule 8(a)(2)'s fairly lenient notice-pleading standard. *See id.* at 234. But the bald assertion that Defendants "have been enriched" does not.

Accordingly, we affirm the District Court's dismissal of Fair Wind's unjust enrichment claim.

## IV.

We next address the District Court's award of attorneys' fees to the Defendants in the amount of $36,347.[7]

---

[7] "We exercise plenary review over legal issues relating to the appropriate standard under which to evaluate an application for attorneys' fees. . . . We review the reasonableness of the

After reducing Defendants' fee award by roughly $5,000 for excessive billing and vague time entries, the District Court awarded Defendants the remainder of their hours billed for the entirety of the litigation, relying solely on Title 5, section 541 of the Virgin Islands Code. *See Fair Wind Sailing, Inc.*, 2014 WL 886832, at *1-3. The District Court did not attempt to segregate which fees were accrued defending the federal claim, nor did it discuss the Lanham Act as a basis for a fee award. *Id.*

A.

Section 541 provides in relevant part that "there shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto." V.I. Code Ann. tit. 5, § 541(b). However, section 541 does not permit a district court to award the prevailing party all of its attorneys' fees where the case includes both territorial and federal causes of action. Rather, "[i]n awarding fees to a prevailing party under section 541, . . . the court must subtract fees and costs associated with federal claims, as section 541 is *only* applicable to fees for the litigant who succeeds in pursuing [or defending] Virgin Islands territorial claims." *Figueroa v. Buccaneer Hotel Inc.*, 188 F.3d 172, 183 (3d Cir. 1999) (emphasis added).

District Court's award of attorneys' fees for abuse of discretion." *Nat'l Amusements Inc. v. Borough of Palmyra*, 716 F.3d 57, 64 (3d Cir. 2013) (quoting *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226, 231 (3d Cir. 2008)).

18

Defendants do not dispute that the District Court failed to "subtract fees and costs associated with" Fair Wind's federal claim. *Id.* They nonetheless insist that "the District Court correctly chose to award Defendants . . . fees solely under Section [541] . . . as the attorneys' fees expended in defending all three of [Fair Wind's] causes of action were inextricably intertwined." Appellees' Supplemental Br. at 9. Defendants "cit[e] . . . defense counsel's timesheets" as evidence that "the fees incurred defending against Plaintiff's claims for trade dress infringement, tortious interference with contract and unjust enrichment were 'inextricably intertwined.'" *Id.* at 23.

We have never approved of section 541 fees where the territorial and federal claims are "inextricably intertwined." Acknowledging that we have not endorsed this argument, Defendants rely on a Ninth Circuit opinion, *Gracie v. Gracie*, 217 F.3d 1060 (9th Cir. 2000), for their proposed exception to the *Figueroa* rule. There, the Ninth Circuit held that "a party cannot recover legal fees incurred in litigating non-Lanham Act claims *unless* the Lanham Act claims and non-Lanham Act claims are so intertwined that it is *impossible to differentiate* between work done on claims." *Id.* at 1069 (internal quotation marks omitted).

Despite Defendants' insistence that the fees incurred defending the territorial law and federal law claims cannot be segregated, the District Court made no such finding. Unless and until it does, we see no reason to decide when, if ever, the "inextricably intertwined" exception to the *Figueroa* rule might apply. *See Gracie*, 217 F.3d at 1070 ("[T]he impossibility of making an *exact* apportionment does not relieve the district court of its duty to make *some* attempt to

19

adjust the fee award in an effort to reflect an apportionment.").

Moreover, we remain unconvinced that where federal and territorial claims are "inextricably intertwined," it necessarily makes sense to award fees to the prevailing party for the entirety of the litigation under section 541. The rule proposed by Defendants, it seems to us, would encourage parties to obfuscate time entries. Indeed, the fact that Defendants cite their own time entries as evidence that the claims were inextricably intertwined lends credence to that concern. Moreover, Defendants' proposed rule seems particularly inequitable in a case, such as this one, where the majority of the parties' energy was spent litigating the federal claim, not the territorial claims.

In sum, the District Court should have attempted to apportion the fees incurred defending the territorial and federal claims.

B.

Once the time spent on the federal and territorial claims is apportioned, the question remains whether Defendants may recover fees spent defending the federal claim at all. As it happens, Fair Wind's sole federal claim was brought under the Lanham Act, § 35(a) of which permits the recovery of reasonable attorneys' fees only "in exceptional cases." 15 U.S.C. § 1117(a). Defendants argue that this case meets the standard for exceptionality, and that they are therefore entitled to reasonable fees expended on the entirety of the litigation.

As we have explained elsewhere, "Congress added the attorney's fee provision of § 35(a) to the Lanham Act in 1975 in response to the Supreme Court's decision in *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714 (1967), holding that attorney's fees were not available in trademark cases under the Lanham Act absent express statutory authority." *Securacomm Consulting, Inc. v. Securacom Inc*., 224 F.3d 273, 279 (3d Cir. 2000). However, while "the statute now expressly provides for an award of attorney's fees at the discretion of the court in 'exceptional cases,' 15 U.S.C. § 1117(a), it does not define an 'exceptional case[].'" *Id*. at 279-80 (alteration in original).

Our case law requires a district court to engage in a "two-step process" before determining that a case is "exceptional" under § 35(a):

> First, the District Court must decide whether the defendant engaged in any culpable conduct. We have listed bad faith, fraud, malice, and knowing infringement as non-exclusive examples of the sort of culpable conduct that could support a fee award. Moreover, the culpable conduct may relate not only to the circumstances of the Lanham Act violation, but also to the way the losing party handled himself during the litigation. Second, if the District Court finds culpable conduct, it must decide whether the circumstances are "exceptional" enough to warrant a fee award.

*Green v. Fornario*, 486 F.3d 100, 103 (3d Cir. 2007) (internal citation omitted). The requirement that a district court find

culpability before awarding attorneys' fees under the Lanham Act has been in place in this Circuit for over two decades. *See Ferrero U.S.A., Inc. v. Ozak Trading, Inc.*, 952 F.2d 44, 48 (3d Cir. 1991) (holding that awarding fees under § 35(a) is inappropriate absent an "explicit finding . . . that [the losing party] acted willfully or in bad faith").

While this action was on appeal, the Supreme Court handed down *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 134 S.Ct. 1749 (2014), analyzing when a district court may award fees under § 285 of the Patent Act. Like § 35(a) of the Lanham Act, § 285 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.

Prior to *Octane Fitness*, the Federal Circuit took the position that "a case is 'exceptional' only if a district court either finds litigation-related misconduct of an independently sanctionable magnitude or determines that the litigation was both 'brought in subjective bad faith' and 'objectively baseless.'" *Octane Fitness*, 134 S. Ct. at 1756 (quoting *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005)). The *Octane Fitness* Court rejected this standard, embracing a definition of "exceptional" far more expansive than the one articulated by the Federal Circuit in *Brooks*. Looking to the plain meaning of the term, the Court explained that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Thus, it is within a court's discretion to find a case "exceptional" based upon "the governing law and the facts of the case,"

22

irrespective of whether the losing party is culpable. For example, "a case presenting . . . exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. at 1757. This is so even if the losing party's conduct did not suggest "bad faith, fraud, malice, [or] knowing infringement." *Green*, 486 F.3d at 103.

While *Octane Fitness* directly concerns the scope of a district court's discretion to award fees for "exceptional" case under § 285 of the Patent Act, the case controls our interpretation of § 35(a) of the Lanham Act. Not only is § 285 identical to § 35(a), but Congress referenced § 285 in passing § 35(a). *See* S. Rep. No. 93–1400, at 2 (1974), *reprinted in* 1974 U.S.C.C.A.N. 7132, 7133; *see also Securacomm Consulting*, 224 F.3d at 281. Thus, we have "look[ed] to the interpretation of the patent statute for guidance" in interpreting § 35(a). *Id*. Moreover, in its explication of the word "exceptional," the *Octane Fitness* Court relied in part on the D.C. Circuit's holding that the term "exceptional," as used *in § 35(a) of the Lanham Act*, means "uncommon" or "not run-of-the-mill." *Octane Fitness*, 134 S. Ct. at 1756 (quoting *Noxell Corp. v. Firehouse No. 1 Bar-B-Que Rest.*, 771 F.2d 521, 526 (D.C. Cir. 1985)). In so doing, the *Octane Fitness* Court noted that the Lanham Act fee provision is "identical" to § 285 of the Patent Act. *Id*. We believe that the Court was sending a clear message that it was defining "exceptional" not just for the fee provision in the Patent Act, but for the fee provision in the Lanham Act as well.

We therefore import *Octane Fitness*'s definition of "exceptionality" into our interpretation of § 35(a) of the Lanham Act. Under *Octane Fitness*, a district court may find

23

a case "exceptional," and therefore award fees to the prevailing party, when (a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an "unreasonable manner." *Id.*; *cf. Green*, 486 F.3d at 103 (noting that a district court may award fees as a result of either the circumstances of the Lanham Act violation or the way in which the losing party litigated the claim). Whether litigation positions or litigation tactics are "exceptional" enough to merit attorneys' fees must be determined by district courts "in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. Importantly, that discretion is not cabined by a threshold requirement that the losing party acted culpably. The losing party's blameworthiness may well play a role in a district court's analysis of the "exceptionality" of a case, but *Octane Fitness* has eliminated the first step in our two-step test for awarding fees under § 35(a) of the Lanham Act.

The parties ask us to decide whether this case merits attorneys' fees under § 35(a) of the Lanham Act. We decline to do so. With its unparalleled knowledge of the litigation and the parties, the District Court is better suited to make that assessment in the first instance. *See Securacomm Consulting*, 224 F.3d at 279. We therefore remand to the District Court, so that it may determine whether fees are appropriate under this slightly altered standard for awarding fees in Lanham Act cases.[8]

V.

---

[8] We similarly decline to reach the "reasonableness" of the District Court's fee award.

We affirm the District Court's dismissal of Fair Wind's trade dress and unjust enrichment claims. However, we vacate the District Court's award of attorneys' fees. On remand, the District Court must determine whether this case is an "exceptional" one under § 35(a) of the Lanham Act. If it is, the Court may award reasonable fees for the entirety of the litigation. If it is not, the Court must subtract from its award any fees accrued by Defendants in litigating the Lanham Act claim.